# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-00236-COA

ILENE REYNOLDS ROACH                                          APPELLANT

v.

PAUL ELLIS ROACH, SR.                                          APPELLEE

DATE OF JUDGMENT:            08/29/2023
TRIAL JUDGE:                 HON. CATHERINE FARRIS-CARTER
COURT FROM WHICH APPEALED:   COAHOMA COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:      JASON EDWARD CAMPBELL
ATTORNEY FOR APPELLEE:       CHERYL ANN WEBSTER
NATURE OF THE CASE:          CIVIL - DOMESTIC RELATIONS
DISPOSITION:                 AFFIRMED - 05/20/2025
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., McCARTY AND ST. PÉ, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1.     After the Coahoma County Chancery Court granted Paul Roach a divorce on the ground of habitual cruel and inhuman treatment, Ilene Roach filed a motion for relief from the judgment under Rule 60(b) of the Mississippi Rules of Civil Procedure. The court denied the motion, finding no merit to Ilene's claims. On appeal, we find no error in the court's denial of the Rule 60(b) motion, and we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     On January 17, 2023, Paul filed for divorce from his wife Ilene on the ground of habitual cruel and inhuman treatment or, in the alternative, irreconcilable differences. His complaint alleged that the couple had been separated since October 12, 2022, when Ilene left the marital home. There were no children born of the marriage, but the couple had adult

children from prior marriages. A summons was issued to Ilene at her daughter's home in Converse, Texas, where she had been residing since leaving Mississippi. A summons was reissued on February 23, 2023, using the same address.[1] A proof of service form indicates that the process server issued service by certified mail. However, Ilene did not file an answer to the complaint.

¶3.     The chancery court held a hearing on August 8, 2023. Ilene was not present. The chancellor noted for the record that "process was given unto Mrs. Roach wherein an address of 6815 Waterfall Pass, Converse, Texas 78109 was served unto her and attached hereto is the certified return receipt requested notice indicating that Ilene Roach received this documentation on January the 30th, 2023."

¶4.     Paul testified that the couple had a "pretty good" marriage until Ilene informed him in October 2022 that "she wanted to move to Texas . . . [, and] she was going with or without [him]." Paul was seventy-four years old, and he "was blind and kind of cripple[d] . . . from the Vietnam War." Before leaving, Ilene had been giving Paul approximately fourteen medications each day. After Ilene left, Paul discovered that one of the medications was morphine and that he had been placed on hospice care. Paul testified, "She knew I wasn't in no condition where I needed morphine." He also said that Ilene "took all her personal belongings" when she left, as well as account information, Paul's wallet, his briefcase

---

[1] Ilene was served twice because she claimed that the first summons issued on January 17, 2023, did not contain a copy of the complaint.

(containing his military paperwork), car keys, and the "deeds to the car, to the house."

¶5.     Paul's attorney submitted a property deed into evidence that Paul executed on August 20, 2020. In the deed, Paul (as grantor) conveyed a life estate interest in the property to himself and Ilene, with a remainder interest to Ilene's children. Paul, who did not recall signing the deed, said he never intended to make a "gift" to Ilene's children to the exclusion of his own children and grandchildren.

¶6.     Paul's granddaughter, Kioshia Beard, testified that she has been living with her grandfather since October 2022, after she was informed that Ilene "left [Paul] in his house by himself." When Beard initially came to check on Paul, the "house was trashed, [with] hangers everywhere," and he "had a black eye" as a result of a fall. She met with Paul's home healthcare nurse, who indicated that the morphine being administered to him was likely the reason he had been falling down and experiencing incontinence. Beard opined, "I feel like [Ilene] was trying to kill my grandfather," and "she didn't have his best interests." Beard said Paul's health had improved since Ilene left, and he could walk around the house without falling. She said, "He went from [taking] 14 pills to taking four in the morning and . . . three at night."

¶7.     The chancery court issued a bench ruling, finding that the court had "personal subject matter jurisdiction in the case." The court granted Paul a divorce "on the basis of cruel and inhuman treatment," reasoning "that it clearly would be cruel and inhumane for an individual to leave a person who does not have eyesight in a home by themself expecting for them to

3

provide for their own care and provisions." The chancery court also declared that the August 2020 deed was void and invalid, as it "was procured through fraud and deceit by [Ilene], i.e., in the fact that [Paul] . . . lacked the capacity to be able to read the deed and to have a full understanding of what it was that he was executing." The court entered the final judgment of divorce on August 29, 2023. Ilene did not file a notice of appeal within the required thirty days; nor did she file a timely motion for a new trial under Rule 59 of the Mississippi Rules of Civil Procedure.[2]

¶8. Ilene filed a Rule 60(b) motion for relief from the judgment on November 22, 2023, requesting that the chancery court vacate the judgment and allow a new trial. In her memorandum in support of the motion, she alleged that (1) Paul "utilized fraud, misrepresentation or other misconduct" to obtain the divorce; (2) the divorce order was essentially a default judgment because she was not able to present a defense due to her attorney's failure to file an answer; and (3) the judgment was void because the service of process by certified mail was insufficient and because she did not receive notice of the hearing.

¶9. The chancery court held a hearing on the Rule 60(b) motion. Reiterating the assignments of error from the motion, Ilene's attorney argued that the chancery court lacked personal jurisdiction over Ilene. He also claimed that Ilene's former attorney had

---

[2] *See* M.R.A.P. 4 (mandating that a notice of appeal be filed "within 30 days after the date of entry of the judgment or order appealed from"); M.R.C.P. 59(b) (requiring a motion for new trial be filed "not later than ten days after the entry of judgment").

"wrongfully assured her that he had it taken care of and things were being filed[.]"

¶10.     Paul's attorney, Christopher Finn, insisted that service of process by certified mail was effective and proper, noting Paul's understanding that Ilene "had moved to Texas on a permanent basis" and "was not returning." He also refuted Ilene's claim that a copy of the complaint was not attached to the second summons. Finn represented to the chancery court that he had personally stapled the summons to the complaint and had given it to the process server to put in certified mail. He also said that he "was the only attorney of record" and that "[n]o one ever communicated to me in any manner that they were an attorney representing Mrs. Roach." Ilene admitted to receiving the two summonses by certified mail and to signing for them, but she claimed that she "never did receive a copy of the [c]omplaint."

¶11.     Ilene testified that she went to Texas after suffering a stroke in September 2022 to let her daughter take care of her. She stated that she was unable to take care of herself for "four to five months." Ilene claimed that she had asked Paul to come to Texas with her. Ilene only intended to stay in Texas until she "got better," and she kept a Mississippi driver's license. She denied taking any belongings from the house except her clothing. Ilene admitted that she had left Paul alone in the home, but she said that she had made provisions with his home healthcare nurses to take care of him. She could not recall what diagnoses warranted Paul's hospice care, noting she had cognitive issues since her stroke.

¶12.     Paul acknowledged that Ilene initially said that "she was going to go up to Texas for physical therapy." However, Ilene later told him "she was going to move to Texas" and tried

to get him to go with her, but he would not leave his home in Mississippi. Although he tried to "talk to her[,] [i]t didn't do any good," and she went without him. Paul testified that Ilene took "[e]verything that wasn't nailed down," except for furniture. He also claimed that she "cleaned out the bank accounts," leaving him with "$14 in my checking account and about 14 cents in a savings account."

¶13. Paul had no knowledge whether Ilene was hospitalized in September 2022, claiming, "I didn't know she was even sick." When asked about his daily routine prior to Ilene's leaving, Paul said Ilene would buy him breakfast at McDonald's and prepare their dinner. He said that "a home-care nurse and some aides . . . would come and give me a bath every day." But after Ilene left, no one was there to provide him with food. Paul testified that the hearing was the first time he had seen Ilene since she left the home.

¶14. In making its findings, the chancery court was willing to accept Ilene's argument that the first summons issued *may* not have had a copy of the complaint attached. The court nevertheless reasoned:

> But when [counsel] submitted it and does it a second time; and for her, again, to say it wasn't no Complaint, I don't think no attorney -- even if the first time was a mistake or an error or whatever, I don't think that there's no attorney -- now, other than my taking his word, I believe that there had to have been a Complaint attached to that second summons.

The chancery court determined that it had jurisdiction and that its judgment of divorce "remains intact." The court entered an order denying Ilene's Rule 60 motion, finding her arguments "totally without merit."

6

**DISCUSSION**

¶15.    "A Rule 60(b) motion filed more than ten days after a circuit court's order is entered does not toll the time to appeal." *DeSoto County v. Standard Const. Co.*, 283 So. 3d 102, 107 (¶16) (Miss. 2019).  Because Ilene did not timely appeal the August 29, 2023 judgment or file a Rule 59 motion within ten days of the judgment, she is appealing only the chancery court's denial of her Rule 60(b) motion.  *See McChester v. McChester*, 300 So. 3d 1035, 1039 (¶15) (Miss. Ct. App. 2020) ("[A]n appeal from a denial of a Rule 60(b) motion brings up for review only the order of denial itself and not the underlying judgment.").

¶16.    When reviewing a Rule 60(b) motion for relief, "reversal is warranted only when an abuse of discretion is found, because these motions are to be addressed at the sound discretion of the trial court."  *Riverboat Corp. of Miss. v. Davis*, 341 So. 3d 77, 81 (¶10) (Miss. 2022).

> **I.     Whether the chancery court erred in finding that service of process by certified mail was proper.**

¶17.    In her motion, Ilene asserted that service of process by certified mail under Rule 4(c)(5) of the Mississippi Rules of Civil Procedure was "insufficient."  Rule 4(c)(5) states that service of process upon "*a person outside this state*" may be accomplished "by sending a copy of the summons and of the complaint to the person to be served by certified mail, return receipt requested." M.R.C.P. 4(c)(5) (emphasis added).  The advisory committee notes to the Rule expressly limit certified mail service "to persons outside the state."  M.R.C.P. 4(c)(5) adv. cmt. notes.  Ilene claimed that because "she was still a citizen of the state of

7

Mississippi," service of process under Rule 4(c)(5) was ineffective. Thus, she argued the judgment of divorce should be set aside as void.

¶18. The chancery court was not persuaded by Ilene's argument, noting that she "remains outside of the state to this very day." The court found "credible" Paul's testimony that Ilene had asked him to move to Texas and that she "took all of her personal items such as clothing, pictures off the walls of the home[,] and all of the money out of the joint bank accounts." The chancery court also noted the testimony by Finn that he had personally prepared the documents sent to Ilene and that he always attached a copy of the complaint to a summons. Therefore, the court found no merit to Ilene's claims that service was ineffective.

¶19. Appealing the court's ruling, Ilene reasserts her argument that because she was an "in-state defendant," the service of process on her by certified mail was not allowed under Rule 4(c)(5). Ilene claims that she only "left the state temporarily just so that her daughter could care for her." Ilene argues she "had no intent to abandon her home in Mississippi," and she attempts to discredit Paul's testimony in her reply brief, noting his confusion about his healthcare. Nothing in the rule intimates that a citizen of the state, who is currently outside of Mississippi, may not be served "outside this state" by certified mail; nor has Ilene cited any authority for such proposition.

¶20. As this Court has held, it is the responsibility of the chancery court "to hear the evidence, assess the credibility of witnesses, and determine ultimately what weight and worth to afford any particular aspect of proof." *Hackler v. Hackler*, 296 So. 3d 773, 778 (¶35)

8

(Miss. Ct. App. 2020). Here, the chancery court expressly stated that it found the testimony of Paul and his attorney to be "credible." It is not for this Court to "reweigh evidence or reconsider the veracity of witnesses or the credibility of evidence." *Muirhead v. Cogan*, 158 So. 3d 1259, 1264 (¶19) (Miss. Ct. App. 2015). Because the evidence supports the court's ruling, we find no error.

II. **Whether the chancery court erred in denying Ilene's request for relief based on her prior attorney's alleged ineffectiveness.**[3]

¶21. In her motion, Ilene stated that she hired "John Doe"[4] on February 15, 2023, to represent her in the divorce action.[5] She claimed that his failure to file "an entry of appearance and/or any Answer in this cause" resulted in severe prejudice. Therefore, under Rule 60(b)(2), which provides relief from judgments obtained through accident or mistake, she contends that the chancery court "should vacate its prior order and grant [her] relief." She also asserted that she should have been provided notice of the hearing and that by

---

[3] We have consolidated Issues III and IV from the appellant's brief, as they both concern arguments pertaining to Ilene's lack of representation by her former attorney.

[4] The attorney representing Ilene at the Rule 60(b) motion hearing informed the court that a bar complaint had been filed against her former attorney. In denying her request for relief, the chancery court declined "to state any position with regards to this issue," finding the "proper venue for resolution of this matter is the Mississippi State Bar." Therefore, we have used a pseudonym to protect the confidentiality of such proceedings. *See* Miss. R. Discipline 16(a) ("All disciplinary agencies, their assistants, staff and employees, members of the bar, court reporters, clerks, and receivers are strictly enjoined to keep and maintain confidential, all things arising under these rules and all proceedings thereon.").

[5] Although her motion references an engagement letter, it is not included in the court's record.

9

conducting the divorce hearing without her participation, it was akin to a default judgment. Ilene reasserts her arguments on appeal, claiming that she is entitled to relief from the divorce judgment because the attorney she had hired essentially "took her money and did nothing."

¶22.    Rule 60(b)(2) "provides for extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances, and . . . neither ignorance nor carelessness on the part of an attorney will provide grounds for relief." *Stringfellow v. Stringfellow*, 451 So. 2d 219, 221 (Miss. 1984).   Thus, the Mississippi Supreme Court determined in *Stringfellow* that "[r]elief from a judgment is not to be granted under Rule 60(b) simply because its entry may have resulted from incompetence or ignorance on the part of an attorney employed by the party seeking relief." *Id.*  More recently, in *Mize v. Shiloh Market Inc.*, 336 So. 3d 654 (Miss. Ct. App. 2022), we addressed a trial court's dismissal of a case because the plaintiffs never responded to discovery requests, despite the court's order to do so. *Id*. at 657 (¶¶3-8).   The plaintiffs argued in a motion to reconsider that the "delay was due to their attorney, who had changed firms, had technical issues setting up a home office during the COVID-19 pandemic, and experienced mental health and other wellness issues." *Id*. at (¶9).   We affirmed the trial court's denial of the motion to reconsider on the basis "that the Mizes' excuses for failing to respond to discovery [did] not rise to the level of 'exceptional circumstances' to warrant setting aside the judgment of dismissal pursuant to Rule 60(b)." *Id*. at 661 (¶26) (internal quotation mark omitted).

¶23. We find no merit to Ilene's contention that she was entitled to notice of the hearing and that she was subject to an improper default judgment. No evidence was presented to support Ilene's claim that her former attorney had communicated with Paul's attorney to indicate an intent to defend the action. Finn expressly denied that anyone contacted him claiming to represent Ilene in the divorce action. Our court has recognized that "while notice of hearings must be sent to those that have answered complaints, there is no obligation to mail notice of hearings to those who have failed to answer and thus have not made an appearance in the case." *Carlisle v. Carlisle*, 11 So. 3d 142, 145 (¶10) (Miss. Ct. App. 2009) (quoting *Stinson v. Stinson*, 738 So. 2d 1259, 1261 (¶7) (Miss. Ct. App. 1999)). As this Court noted in *Stinson*, a party in a divorce action who does not answer the complaint is not "recognized by the rules [as] participating in the action." *Stinson*, 738 So. 2d at 1262 (¶10). "Someone who has declared by silence that he does not wish to respond to the court need not be sent notice." *Id.*; *see also Bolivar v. Bolivar*, 151 So. 3d 1035, 1037-38 (¶¶11,14) (Miss. Ct. App. 2014) (Despite the wife's claim that she believed her attorney was handling her case, we found that "she was in default and not owed notice of the divorce hearing" due to her failure "to answer or appear" to defend the divorce action.). Furthermore, in *Clark v. Clark*, 43 So. 3d 496, 501 (¶19) (Miss. Ct. App. 2010), this Court stated:

> We have held a properly served defendant's "failure to answer does not drag a divorce case to a halt. Instead, the plaintiff must, at a hearing, prove the allegations that support the receipt of a divorce. If that is done, then the chancellor has authority to grant the divorce despite the absence of the defendant."

(Quoting *Stinson*, 738 So. 2d at 1263 (¶15)).

¶24.    At the hearing on Ilene's motion for Rule 60(b) relief, the chancery court heard Ilene's explanation regarding her failure to file an answer and appear at the divorce hearing.  The court concluded that there was no merit to her claim that the judgment was a default judgment.  In its order, the court found Ilene's argument that the court's ruling essentially was a default judgment "not well taken," noting that the court had conducted "a full hearing with the required corroborating witnesses establishing the manner in which Paul, a blind veteran, was treated by his wife, Ilene."  Finding Ilene had not shown "exceptional circumstances," the chancery court denied her relief on this basis, and we find no abuse of discretion in the court's ruling.

**CONCLUSION**

¶25.    We affirm the chancery court's order denying Ilene's Rule 60(b) motion, finding no reversible error in the court's denial of relief on these claims of error.[6]

¶26.    **AFFIRMED.**

---

[6] As noted, "an appeal from a denial of a Rule 60(b) motion brings up for review only the order of denial itself and not the underlying judgment." *McChester*, 300 So. 3d at 1039 (¶15).  Because the two remaining issues in her appellant's brief directly challenge the chancery court's findings in the August 2023 final judgment of divorce, those issues are not before us on appeal.  Issue 2 claims that no evidence of desertion supported the ground of habitual cruel and inhuman treatment and that the "grant of divorce on the grounds of cruel and inhuman treatment was reversible error."  Because that judgment is not reviewable, we will not consider this argument.  Issue 5 contends the court erred in not making findings of fact under *Ferguson v. Ferguson*, 639 So. 2d 921 (Miss. 1994), in the divorce judgment.  This issue was not argued before the chancery court and is also not reviewable on appeal.

**CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND ST. PÉ, JJ., CONCUR.**